## Bowling et al. v. Combs et al.

(Decided Nov. 6, 1936.)

ROY W. HOUSE, MURRAY L. BROWN and A. D. HALL for appellants.

A. D. HALL for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

The board of education of Clay county, the county school superintendent, and Bowling a teacher, appeal from a judgment of the Clay circuit court adjudging that Mullins was legally entitled to teach in the common school of district No. 37, known as Lower Spring Creek district, for the 1935-36 school year, rather than Bowling, who received the appointment under circumstances hereinafter related.

Prior to February 1, 1935, three trustees of the district indorsed Mullins. On February 1, 1935, Marion Combs, the last elected trustee for the district, indorsed Mullins. The first indorsement was informal. It was not made a part of an application in due form filled out by Mullins. The last one was in due form.

On February 5, 1935, Bowling filed an application

with the superintendent bearing the indorsement of Estepp and William Combs, the holdover trustees, but which did not have the indorsement of Marion Combs.

Mullins' contention is that on February 8, 1935, he endeavored to file both his documents with the county superintendent, and that officer refused to accept either of them, but that the board upon the indorsement of the two holdovers, and the nomination of the superintendent on June 17, 1935, proceeded illegally to appoint Bowling as teacher in the Spring Creek district, under which appointment Bowling took charge and continued to teach for some time.

On October 15, 1935, Combs, trustee, and Mullins the unsuccessful applicant, filed a suit in which they alleged more elaborately the foregoing facts, and asked the court to enjoin the board from paying Bowling; to enjoin Bowling from conducting the school and the board to assemble and employ Mullins.

A temporary restraining order was issued enjoining Bowling from teaching, and the board from further paying him. Upon hearing this was transformed into a perpetual injunction, granting like relief, and further directing the board to assemble and employ Mullins. From this order appeal is prosecuted.

It is the contention of Mullins that Bowling's recommendation did not authorize the board to appoint him, because it was not properly approved; that he was not nominated by the trustee who alone at that time had authority to nominate. Under section 4399-9, Ky. Stats. 1936, as construed in Morgan County Board of Education v. Elliott, 260 Ky. 672, 86 S. W. (2d) 670, followed in later cases, he is correct in this contention. The right of Bowling, if any, must depend upon his nomination by the superintendent, which can only be efficacious in case the trustee fails to nominate on or before the 1st day of April. See Statute and case cited, supra.

The power or authority of the board to appoint Bowling under the circumstances recited rests on the question as to whether or not the tender of Mullins' application and indorsement was in effect a nomination by Marion Combs, the trustee who had sole authority to nominate within the prescribed time.

When we look to the proof, we find Mullins and Combs, who accompanied him on the occasion, saying

unequivocally that the two applications were tendered to the superintendent on February 8, and that he rejected both of them. One on the ground that it was made out and indorsed prior to February 1, 1935, though we find that it was not tendered until the eighth of that month. The other, dated February 1, tendered at the same time, was rejected because it was thought that two trustees should have signed, and again because it was not made on a form furnished to applicant by the superintendent. At this point we may say that we have carefully compared the form accepted from Bowling with the one tendered by Mullins and they are identical.

On proof the superintendent recalled that Mullins showed him both forms and he says as to the informal one:

"I did not refuse to file it, the only thing I recall relative to it, I told Walter I did not believe it was good, due to the fact that it was signed before the first of February, and because it was not on the form which we had sent out."

As to the application signed by Marion Combs, the superintendent was quite uncertain as to whether it was tendered. He says:

"Well I do not recall seeing this application, though I had knowledge of it, and I knew that he had the application all right. He talked with me about the recommendation along the same line as the other recommendation, and the impression I got from him was, 'couldn't I take that one and employ him even though the other trustees had signed one for Bowling?'"

The question presented is as to whether or not the tender of the application by Mullins was tantamount to a nomination by Marion Combs. We think it was, as did the court below. It should be and is the duty of the superintendent (a ministerial officer in most respects) to accept all tendered applications if made within the prescribed time, and present them to the board for its rejection or acceptance. The procedure here adopted by the superintendent if generally practiced, would put it very much in the power of that officer to finally nominate all teachers seeking contracts. The intention of the law was to give to the trustee the authority to nominate teachers in his district, the only limitation being that he

should do so within a fixed period. Here the nomination was made and tendered in due time and form, and we agree with the court that, having been so made, it became the duty of the superintendent to accept it and place it before the board. Had this been done, as the lower court ruled, Bowling's application would necessarily have been rejected under the statutes and decisions above cited.

Bowling answered jointly with the board and the superintendent, and in an affirmative plea set up that Combs and Mullins had no standing in a court of equity; that during all times, up to and after the employment of Bowling, they stood idly by and permitted the board to act, and Bowling to begin the fulfillment of his contract, which they say constitutes an estoppel by laches or negligence.

Looking to the pleading in question, we have great doubt as to whether it states facts sufficient to constitute a legal ground of estoppel, but, even if it does, when we come to look at the proof we find that Mullins used such diligence in protecting and prosecuting his rights as was possible under the circumstances. He seemed to know his rights, but had difficulty in impressing those from whom he sought assistance. Aside from this, no injury is shown to have been suffered by the board or appellant Bowling by reason of Mullins' failure to act sooner than he did. He had ample reason to anticipate that the board would act on his tendered application and recommendation. After the contract was made with Bowling, he adopted the only course open, and was not so negligent in acting as to afford to appellant a defense of estoppel by negligence.

On the whole case we are of the opinion that the lower court properly granted the injunction.

Judgment affirmed.